The next matter will be Case No. 15-1897, Dr. Piro Anversa v. Partners Healthcare System. May I reserve two minutes for rebuttal please? Yes. Thank you. My name is Tracy Meyer and together with Megan Sittle we represent Drs. Piro Anversa and Dr. Anversa-Leary. Your Honors, this case is not a research misconduct case. This case is also not a case of justice delay. If the District Court's order is upheld, we will be denied. This is a real case where justice will be denied. The issues arose in connection with a research misconduct investigation. There is no question about that. The plaintiffs and doctors do not make any allegations with respect to whether or not there was misconduct. We do not challenge any findings. We don't seek an injunction to prevent the scientific misconduct part of this case to go forward. This case is about an institution using a scientific misconduct investigation which could have been legitimate. Could you just tell us what the current status of the investigation is? Yes, Your Honor. The current status proves our point. It has now been three and a half years later since the allegations have been made. The allegations were made in January of 2013. The preliminary inquiry was supposed to take 60 days. The investigation has a time limit in the statute that is meaningless in the regulations of 120 days. So what should have taken 180 days or six months, we are at three and a half years with no end in sight. What's the current status of the investigation? Is the investigation still ongoing? It is. Okay. Has it broadened even more since you filed your brief? It has not, or not. We have received no further notices of broadening of the allegations. So we are in the position where we have not received a final draft report. Just one other thing. You said that there is no allegation of misconduct on the part of your clients, but didn't they pull them into this based upon a negligence theory? In other words, it was the other Dr. Kessler? Yes, the underlying misconduct allegations are based on a negligence theory. And that should proceed throughout. And we have an administrative remedy to contest that when and if any findings are ever made. The issue is in the course of that investigation, Your partner went out and basically defamed our clients. They breached the confidentiality. They said, hey, look, he is under investigation. Don't touch him, basically. These doctors were being pursued by Mount Sinai. They were being pursued by the University of Miami. Naturally, as soon as partners says, hey, they are under investigation for scientific misconduct, the institutions naturally said, we can't touch you until the allegations are resolved. That's why there is supposed to be confidentiality provisions. That's why we state a claim for breach of privacy that has nothing to do with whether or not we committed a scientific misconduct. Every account in the complaint, with the possible exception of the tenure account, deals with the method and manner in which the inquiry and the investigation have been conducted or are being conducted. Correct, Your Honor. And that is what is specifically And you don't think that a determination as a culmination and a final determination of the administrative process will inform the determination as to whether the method and manner of the inquiry and investigation were wrongful or not? No, Your Honor, and the reason why it will not is the regulations themselves provide that the administrative law judge who will put together the final record for a court. Specifically, the ALJ does not review the institution's procedures. It is precluded from looking at... No, he doesn't, but when his report is filed, the statute and the regulations give ORI the power to require the institutions to remedy any deficiencies in their procedures and to report back to ORI as to what they've done in that regard. But that's not in connection with... It's part of this. It's the culmination. It's the way this investigation will presumably culminate if there is a basis for it. The culmination would be the administrative law judge, Your Honor. It goes from the administrative law judge, which puts together a record that goes to the district court on the issue of scientific misconduct. That record will have nothing about whether the institution breached confidentiality, was biased, breached its breach of contract duties. My clients will have no remedy through the administrative process. It will not be part of the record. It's specifically under the regulations that it cannot be part of the record. Do your clients have a written contract with these provisions in them? No, Your Honor, we do have a written contract. What we allege on the breach of contract is two things. One is in Massachusetts, as you know, every contract has an applied duty of good faith. We allege the breach of that. We also allege that what partners... So you're alleging that violations of confidentiality fall within violations of good faith under MAS law? Yes, Your Honor. And we also allege that these are not just federal regulations. Partners and Harvard put these in their bylaws. They added to them, to be sure. The regulations are simply the base, but they added protections to them. Our point is that the bylaws became part of our contract with the institution, and so that also is a separate breach of contract. Do you agree your complaint necessarily attempts to raise several substantial questions of federal law or else you wouldn't be in federal court, I take it? Yes, it does. So wouldn't you agree that in the perfect world, if the agency provided you with a relatively clear remedy and they would give you an answer to those questions of federal law, that we would all be better off hearing what the agency has to say first? If those two premises were true, Your Honor, I would agree. But neither of those premises are true. Here, they won't give us an answer on federal law. They will not give us an answer on whether we had a privacy right, whether there was a confidentiality breach. They will not touch that. Secondly, the other issue is God knows if they'll ever decide anything. This is a case where there is no time period, no reasonable time period. We've been three and a half years later. They're still in phase one. After phase one, it goes, we get 30 days. Our time periods are fixed. It then goes to the deciding official. They can take as long as he wants. It then goes to ORI. ORI can take as long as it wants. It then goes to the ALJ. The ALJ can take as long as it wants. All of this time, my client is 76 years old. It is a very real possibility that he will be dead before this investigation stops. We've got years to go. We're still in phase one at the institution level. Actually, phase two, if you want to count the preliminary inquiry. Let me ask you this question. If your client is correct, and we have to assume for the allegations, suppose this drags on until he's 80, and the investigation then closes and says, no wrongdoing is the finding of the investigation. Would your client have any recourse with ORI to then go to ORI and complain about how long the investigation was to put him under a cloud? No, it wouldn't. And there's also a real issue of whether the institutions who are conducting the investigation now, if they decide no research misconduct, it doesn't go farther than ORI approves that. My client's statute of limitations may have run on their tort claims, on the breach of contract claims. On the tort claims, there's a three-year statute. On the breach of contract claim, there's a six-year statute. But that's the point, is if they say no misconduct, well, that's nice. That may give them their academic standing back. But it doesn't take away the losses that they've suffered in their intervening three, four, or five years, the loss of jobs, the loss of speaking opportunities, the loss of consulting opportunities, the loss of the ability to continue with their work in this country. Those are real losses that they will have no redress for. And as the Supreme Court has said, one of our fundamental liberties is to be able to come to a court of law to redress violations. And they may not be violations. I mean, that's for the court to decide. But my clients have a right to have their allegations heard by a court, not shuttered to the side. And think about it. We're at the institution level. We're suing the institutions. If the district court were right, the institution who's being sued could simply delay it for three to six years and wipe out our right to have any recourse in either federal court or in state court. Planned through the other way, though. Suppose we would decide this has just taken too long and you've got no guarantee. And so we let you go forward. And then lo and behold, Harvard speeds up, finds a violation. You then appeal that or bring it up with ORI. And suppose ORI then says it was somehow extraordinary and somehow three and a half years was OK. Your Honor, that won't be challenged. There are only three defenses, affirmative defenses, in a research misconduct case. The three affirmative defenses are statute of limitations, whether it was an honest mistake or whether there was a difference of opinion throughout the scientific community. It is not a defense to scientific misconduct that there were procedural defects in the process getting to that finding. They look at the substance. This is a statute and a regulatory framework designed to protect federal money. They're more concerned about protecting federal money than how we get there. Let me ask you this way. The jury in your case would have to decide was three and a half years too long. Was more than 120 days too long? You would argue it's probably not or something. And suppose they come back and say, yes, the institution should have done it in 120 days. Does that implicate any federal regulatory concern that the agency may be thinking, whoa, we don't want these things rushed that much. We would have given more time. And now we're being second-guessed by a jury. If a jury came back and said there's a breach of contract because these regs are part of a contract with us, a breach of good faith, then the scientific misconduct investigation continues. It doesn't cut off the investigation. That's why we say it's collateral. But you have this odd situation where you'd have a jury saying that more than 120 days is too long where the process has been extended by agency order. And the agency doesn't think it's too long. And the jury isn't informed of the agency's determination if the process is still over. Well, I'm not quite sure why the jury wouldn't be informed of that in the first place. But in the second instance, the issue would, let's say we win, the issue would be what damages do we have for that period of time that it's gone on. It doesn't, it would not cut off the scientific misconduct finding. But wouldn't it be much more orderly to get this investigation completed first? I understand your concern about protection of rights. But it strikes me that that's a question of timing. And there are probably other ways we could handle that to ensure the preservation of those rights until after the due completion of the inquiry or investigation. Your Honor, I suggest that this case falls firmly within the Coit decision, which says an indefinite time period is not, there's no exhaustion required if there's an indefinite time period. Thank you. Good morning, Your Honor. Roberto Rosaris and with me, my partner, Jennifer Junius and Andrew Kim on behalf of Harvard Medical School and Dean Broadnicki. We will focus our arguments on exhaustion. And then Mr. Rue on behalf of the partner's defendants will reserve his time for the preemption, immunity and private right of action arguments. Your Honor, in the third sentence of their complaint, plaintiffs' appellants state that the purpose of their action is to put an end to the misconduct investigation. It's the third sentence of their complaint. The district court saw what this case was about. It was an effort at an end run of this research misconduct investigation. Well, that's not the way I read it. I read the complaint as saying that your client promised them that it would follow certain rules if it puts a cloud over a person's entire career. And it hasn't been following those rules. And it's left this person during the last years of his life sitting there for three and a half years while the cloud bangs over his head. That's how I read the complaint. Well, Your Honor, nevertheless, the district court, we believe, was correct in finding that the exhaustion principles apply here. Your position in response to that is that this can continue forever. No, that's not correct, Your Honor. Well, what's the time limit? What's the time limit? Well, it's up to the agency. So the agency has time limits and there are safeguards throughout the regulations. HHS has enacted 17 pages of regulations establishing a very comprehensive scheme here that sets deadlines and provides other safeguards for misconduct investigations. Take this hypothetical. Take the hypothetical that Harvard is going to go on not for 60 or 120 days but for three and a half years with one of these investigations. And the doctor thinks that's way too long. What can the doctor do about it? Well, first of all, it's up to ORI. It's not up to... That wasn't my question. My question is, unless what you're saying is the doctor can do nothing about it, I think is what you're saying. Well, the doctor ultimately will have... We're not saying that the doctor never has a claim here but the initial review must be channeled to the agency. My question is what if Harvard... Suppose Harvard had announced, we're going to take three and a half years because you're kind of old. If we drag it out three and a half years, none of our competitors will be able to hire you because we put a cloud over your head and then by the time we're done with this investigation, you'll be dead. So Harvard announces that and they're going to take a long time. What recourse would he have? Well, the short answer to that is we would say that the subject of the investigation in this case would not have a formal recourse. So the answer is no recourse at all? The broader answer is that it's up to ORI to make the decision as to the timeline. And it's like asking, if you look at an SEC investigation, there are subjects of SEC investigations that take an indeterminate amount of time. Right, but the person who's the subject doesn't have a contract with the SEC in which the SEC promised to be in good faith and do things in a certain manner. So I bring you back to if you assume, and it's only an assumption because maybe we wouldn't find, but if you assume there was a contractual commitment by Harvard to its doctors that if it puts a cloud over their head, it will conduct an investigation in a certain manner and with some certain speed, I think what you're saying is notwithstanding that there is no recourse, the doctor has, under your view, if Harvard should decide to go for three and a half years rather than 120 days. Well, there is no such contract in this case. There's no such contract that puts up any type of timeline. But I want you to assume, that's a separate question, okay? We have a separate question under Massachusetts law whether the personnel policy is incorporated as part of the contract. Well, in this case, there's no contract that specifies any specific deadline whatsoever. And so Harvard is standing, is applying the regulations pursuant to the ORI regulations. It is following the regulations. You're avoiding the question. My question was assume, you may win, that there's no contract and then you win, okay? But let's assume that we find there is, for pleading purposes, arguably a contract. I bring you back to my question. I think that's your position that notwithstanding the existence of such a contract, there's absolutely no recourse for any of Harvard's doctors should Harvard decide to do what's being alleged here. Well, again, taking that assumption that within that contract, there were deadlines as to these type of things, it would be a clear assumption. I would say that to the extent that there is, it's not that they never have recourse, but that recourse only comes after the initial review by the agency. In other words, the recourse would be after the delay is completed. Well, again, so in other words, there's no delay here. So are you saying that the review by the agency totals any statute of limitations problems? We don't believe any injury has actually accrued. So the statute of limitations hasn't even initiated here. There's no cognizable injury. But what you are saying is that in your view, any rights that they may have in this regard, that the plaintiffs may have in this regard, should be regarded as a matter of timing. They should not be allowed to go forward with that until the investigation is completed within whatever time ORI allows for the completion of the investigation. Exactly. This is a question of the initial review being channeled to the agency, not that there's never any. All right. And you will agree that to the extent that exhaustion is an equitable doctrine, and at least administrative exhaustion is, as opposed to statutory exhaustion, we acting on equitable principles could structure the matter so as to preserve statute of limitations concerns and other valid concerns that Ms. Miner has raised here? Yes, Your Honor. We agree that the court on equitable grounds could do that. And it's notable that this is such a comprehensive grant of authority to the agency that the regulations even require, if there is an extended investigation that ultimately results in a finding of no misconduct, the regulations themselves address that issue. In fact, in its regulation 93.304, it's 42 CFR, which requires institutions in those specific instances to do all that they can to restore the individual's reputation. But we should note here that in terms of the length of this is that there has been steady progress, so in a way it's a bit misleading to suggest the investigation has been going on since the 13th. It's a multi-tiered process, so it went from inquiry, and that took approximately a year, to investigation where we are now. The collection of evidence, as I understand it, is complete, and the panel is in the process of writing an incredibly complex report. And this is in a case where the appellants themselves concede that the work actually had some issues with it, that there were some fabrications or issues in their work, and that's conceded in the complaint. If the investigation concludes with a finding of no conduct and thus this doctor was placed under a cloud that was ultimately determined to be incorrect, then what recourse will the doctor have with regard to his complaint that you breached your contractual duty of good faith and fair dealing by unnecessarily dragging on the investigation? ORI would not consider that, would they? Well, several responses to that. First of all, at that point, at the conclusion of the agency's work, the appellants could bring their case at that time, number one. Number two, ORI has supervisory authority over the institutions. In fact, ORI has the authority to remove the institutions from the investigation process and step in the shoes of the investigation. ORI has the process to discipline institutions for the way in which they run investigations. So if ORI finds that investigation took too long, ORI can discipline those institutions. Furthermore, just as in this court's Frazier decision, the Frazier-Fairhaven decision, is that in that case, what this court decided is that even if the agency can't address and provide all of the relief that the plaintiff is seeking, that exhaustion of administrative exhaustion is still important because it can narrow the claims. So in your honor's hypothetical, even if the court, even if the agency went through and ultimately decided that there was no misconduct, that would narrow dramatically the claims that would ever reach the district court. And yes, there could possibly be a claim at that time. There could be a claim that could be filed, and that's what we're saying. This is one of delayed judicial review, not one of eliminate all judicial review. But that claim that would be brought at that time would benefit from the exhaustion because there would be a record that would be established, and all the claims would be narrowed. I just want to pin down what you just said relative to what Judge Selye said, though, in terms of equitable, essentially equitable tolling. I mean, are you saying when you say that they can file actions post-administrative review, are you conceding that there's no statute of limitations issues that you're going to present as an affirmative defense? Your Honor, we don't believe that the statute has begun running because we don't believe there's a cognizable injury. So we don't think there is a statute of limitations issue. But yes, the answer to your question was that we would I mean, for instance, a claim such as breach of confidentiality, they're saying that has happened now. And why wouldn't that run? Well, because our Or why wouldn't that have accrued? That's different from some of their other claims. That's a good point, Your Honor. But we still believe that there would be no cognizable injury. But we also concede, as Judge Selye suggested, that this court has the equitable ability to essentially toll the statute of limitations. The easiest thing to do, if we accept your other arguments, let's begin, but the easiest thing to do is simply amend the district court's order, not dismiss the action, but stay it in the district court until the prompt conclusion of the administrative proceeding. Then the statute of limitations is whatever it was on the day the action was filed. Correct, Your Honor. Thank you, Your Honor. When is this going to finish? Your Honor, it's not the institution's decision as to when it finishes. There's an extension to ORI recently granted an extension of the investigation process to November 1st. Where it stands right now, and there has been steady process throughout, is that the collection of evidence has concluded. And the panel, which is a panel of experts, they're professors, they're doctors, they obviously have other things that they do, is drafting reports. And there are three respondents. There are two plaintiffs here, but there are three respondents. And these reports, for each separate one, it can be hundreds of pages. And this is an incredibly complicated case that involves myocardial cell regeneration. With incredibly, and it started off with three allegations. Due to the regulations that require the institutions to follow all possible leads, the investigation has necessarily expanded. And that was a result of what the regulations required. And it has expanded to many other allegations, many other papers. And this was a study that's so important. We're not only talking about millions of dollars of grant money. We're not talking about dozens of papers that are out there. We're talking about human studies that were currently being conducted based on the science. And we're talking about, this is the course of science that scientists around the world are dedicating themselves to an idea that might not be right. And so, yes, the panel of experts is spending serious time on this really important issue. And ORI has, in consultation with the institutions, has granted that additional time because they recognize just how important this investigation is. Thank you. Thank you. Very briefly. The ORI has granted at least five extensions so far, one of which was three months after the fact. In other words, the time period had ended without the institution seeking an extension of time. The time ran out. And ORI apparently thought that it could do it after the fact. The second thing. Hang on. Judge Kayata pointed out that the other counsel has not argued yet. There's another respondent. There's another respondent who has to argue. Oh, I'm sorry. So hold that thought. Okay. Sorry. Thank you, Your Honors. And thank you for giving me some additional time here to address these. Let me start by just addressing Judge Kayata's question to Mr. Brasserias and slightly deviate from his answer about what can appellants do during the course of this investigation. ORI has complete authority to deal with every one of the purported violations that were put forth in the complaint. And they can do that right now. And there's nothing that stops appellants from going to ORI. They haven't done it. There's not a set process that says here's how you do it. But nothing prevents them from doing that today. They haven't done it. Instead, what they want to do is come to court and say, federal courts, step in the shoes of ORI. They say right in their appellate group, ORI is not doing its job. They're not an effective check. Well, Congress set them up to be the effective check. That is why I'm going to talk about these alternative grounds for affirming if the court is not inclined to affirm on exhaustion grounds. Because there is a pervasive set of regulations. Congress has spoken, the ORI has spoken on every aspect of this investigation process. To have a jury come in and question whether 120 days or additional extensions are warranted, when ORI has been tasked with that determination and has made that determination, yes, we think based on where things are going now, you need more time. And then a jury would come later on and say, we disagree. That wasn't good faith to take this much time. Well, that presents a problem. And that's exactly why these claims shouldn't be allowed to go forward, even if they weren't affirmed on exhaustion grounds. The First Circuit has been very clear that it can affirm on the basis of any argument that's before the district court that's supported by the record, even if it's not based on the district court's rationale. Here, there's no dispute that the issues of preemption and immunity were before the district court. Appellants have argued, however, that the private right of action argument was not before the district court. They claim that that wasn't properly raised by the institutions below. They suggest that it only was brought up in the reply brief below, and therefore  Well, that's simply not true. The institutions advanced this argument from the very outset, even in response to the 93A demand letter sent in 2014. The institutions advised appellants no private right of action is afforded in the relevant federal regulations. And any complaint regarding compliance with the regulations falls squarely under the authority of ORI, not a state court. In its opening brief before the district court, on the very first page, the institutions wrote, because these federal regulations do not afford a private right of action, they have couched their procedural challenges within state law causes of action. Notwithstanding the delay issue, what about the breach of confidentiality, which they allege is causing irreparable damage to their reputations and inability to get jobs, other jobs? Two points on that, Your Honor. The first is that this claim of irreparable harm doesn't seem to make any sense in the terms of the breach is that the investigation is happening. It's one of the breaches. The breach in the confidentiality is that there is an investigation and that these doctors are under review. That's a fact. It's out there. If there's any sort of damage that happened from that, that could be redressed, arguably, at some time down the road. But it's not that they're continuing to accrue more damage. In fact, they're no longer employees of the Brigham Bearer in Switzerland in a new facility. They had a conference last month on these same issues. So they're doing fine in that regard. The second issue is that these claims are not based on common law rights. They don't arise from any common law rights. They're couched in these terms. But they're all turned on specific instances that are tied to the regulations. There's no common law right that a research misconduct investigation should take 120 days. That's based on these federal regulations. There's no common law right that you can't tell people that an employee is under an investigation. That's based on these regulations. In fact, the regulations themselves say you shouldn't disclose the nature of the investigation to the extent possible. There's wiggle room there. And that's why ORI has been given the job and the task of handling these things. It's not the court's job to get involved and to come do their job for them. And that's what is being done here. And that's why we've raised this private right of action issue, is that there's no clear right for them. What they want to do is sue under the regulations. Say this has been a violation of 42 CFR 93-103. 105. They want to do that, but they can't. Alexander, Armstrong, these cases prevent them from doing that. So what they've done is try to repackage these into these state law claims. But if you strip the regulations out of those claims, they fall apart. There's nothing to them anymore. And that's what Buckman, the Buckman case talked about. They say it's not a private right of action case, but Buckman, the Supreme Court distinguished its decision in Medtronic for that very same reason, saying in Medtronic the case didn't depend on the federal regulations here. Their claims, the state law claims, only survive if you couch them in those federal regulations. And we think the same is going on. Thank you. Common law rights can be based on any number of statutes or regulations. The common law right in Massachusetts to the right of privacy can be based on a common law principle of privacy, can be based on a federal statute that provides for confidentiality. It is true that the regulations give the confidentiality, but what we are arguing is that the states have created and common law has created remedies for breaches of confidentiality, breaches of privacy. At least we're allowed to present those. With respect to my clients are doing fine, my clients couldn't get a job in this country. My clients are not doing fine. Ms. Miner, could you address the two last points that were made? One is we hear that ORI has, in fact, reviewed and granted an extension. Yes. So if ORI, using its expertise, has made a determination to allow Harvard to go three and a half years, how could a jury come back and say, no, we think ORI was wrong? That's an odd form of administrative review. Because there's no other review for that, Your Honor. That's the problem. The regulatory framework did not give us any right. They get extensions, just so you all understand. They don't even tell us they're asking for an extension. They don't tell us that they get an extension. Well, a claim was just made by counsel that you could write a letter to ORI complaining about the length of the delay and asking that ORI not give extensions. Certainly. We could write a letter. We could write a letter to our congressman. We could write a letter to the president. But that doesn't mean that there's any process where ORI has to respond to us. Have you done that? We have not. And then on the confidentiality point, if I'm understanding it correctly, that harm has essentially occurred. Yes. So the question is, is can you get to a jury now on it or have to wait until after the investigation? Exactly. That harm occurred in 2014 when members of the panel told other people that our clients were the subject of research misconduct allegations and that they were going after all of their work. Once that was out publicly, my clients were shut down in this country. Thank you.